IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| **LEROY J. SPRINGIRTH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:10-00669 |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case is presently pending before the Court on the Plaintiff's Motion for Remand (Document No. 13.) and Defendant's Motion for Judgment on the Pleadings. (Document No. 14.) Both parties have consented in writing to a decision by the United States Magistrate Judge. (Document Nos. 3 and 4.)

The Plaintiff, Leroy J. Springirth (hereinafter referred to as "Claimant"), filed an application for SSI on August 28, 2007 (protective filing date), alleging disability as of July 1, 2002, due to back problems, nerve damage, degenerative disc disease, depression and anxiety, and knee problems.[1] (Tr.

---

[1] Claimant filed previous applications for DIB and SSI on March 29, 1999, and July 18, 2002. (Tr. at 9-10.) The applications were denied on May 7, 1999, and June 3, 2003, without further action or appeal. (*Id.*) Accordingly, the ALJ found that "these determinations are res judicata regarding the periods through the date of the prior determinations on May 7, 1999 and June 3, 2003." (*Id.*) On February 9, 2004, Claimant filed further applications for DIB and SSI, alleging disability as of March 15, 2002. (*Id.*) The claims were denied initially and on reconsideration. (*Id.*) By decision dated November 21, 2005, ALJ Brian P. Kilbane determined that Claimant was not entitled to benefits. (Tr. at 9-10, 77-94) The ALJ's decision became the final decision of the Commissioner on September 27, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 9-10.) This Court subsequently affirmed the decision of the Commissioner. (*Id.*)

at 9-10, 138-41, 149, 154.) The claim was denied initially and upon reconsideration. (Tr. at 99-101, 105-07.) In April, 2008, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 108-11.) The hearing was held on October 30, 2008, before the Honorable R. Neely Owen. (Tr. at 27-57.) At the hearing, Claimant amended his alleged onset date to December 11, 2006. (Tr. at 11, 33.) By decision dated December 1, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 9-26.) The ALJ's decision became the final decision of the Commissioner on February 26, 2010, when the Appeals Council denied Claimant's request for review. (Tr. at 1-3.) On April 27, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the

claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently,

>appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
>>(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
>
>>(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since August 28, 2007, the application date. (Tr. at 12, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from residuals of right knee arthroplasty, sprains/strains of all types, cervical spondylosis, borderline intellectual functioning, and depression, which were severe impairments. (Tr. at 12, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity to perform medium exertional work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) occasionally perform postural activities including

5

> climbing, balancing, stooping, kneeling, crouching and crawling, and has no manipulative or visual limitations but is limited in hearing and unlimited in speaking, and should avoid concentrated exposure to extreme cold, working in vibrations, and working in hazardous conditions such as heights and around moving machinery, and has additional moderate non-exertional limitations in the abilities to understand, remember and complete detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. These limitations are consistent with the reports of medical experts for Disability Determination Services at the reconsideration level. (Exhibits 14F and 16F).

(Tr. at 21-22, Finding No. 4.) At step four, the ALJ found that Claimant could perform his past relevant work as a groundskeeper on a golf course, security guard, and restaurant cook. (Tr. at 25, Finding No. 5.) On this basis, benefits were denied. (Tr. at 26, Finding No. 6.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 11, 1947, and was 61 years old at the time of the administrative hearing, October 30, 2008. (Tr. at 138.) Claimant had a high school education and was able to communicate in English. (Tr. at 153, 160.) In the past, he worked as a . (Tr. at 25, Finding No. 5; 54, 155-56)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to explain why the prior decision should have been discounted, contrary to AR 00-1(4). (Document No. 13 at 3-7.) Claimant asserts that the ALJ neither explained why ALJ Kilbane's prior decision was not supported by the substantial evidence of record, nor identified any of Claimant's conditions that improved subsequent to ALJ Kilbane's decision. (Id. at 4.) Pursuant to AR 00-1(4), Claimant contends that because only three years and one month lapsed between ALJ Kilbane's decision and ALJ Owen's decision, the three year remoteness bar to explanation is immaterial. (Id. at 5.) Claimant further asserts that the ALJ erred in finding that Claimant's condition had improved since Judge Kilbane's decision because there was a lack of medical doctors opining that his condition had improved and because the current transcript fails to incorporate the evidence submitted at the prior hearing. (Id. at 5-6.)

In response, the Commissioner asserts that contrary to Claimant's allegation, ALJ Owen considered AR 00-1(4) and the holding in Albright and found that they were applicable to Claimant's prior application. (Document No. 14 at 11.) ALJ Owen noted that Claimant's instant

application was filed nearly two years after the prior ALJ's decision, that Claimant's condition had improved since the prior decision, and therefore, that the prior findings were inapplicable to the instant matter. (Id.) Regarding Claimant's improvement, the Commissioner asserts that the evidence of record revealed that Claimant's foot pain improved and that his knee surgery in January, 2007, alleviated his knee pain. (Id. at 11-12.) The Commissioner asserts that the opinions of Drs. Lambrechts and Reddy support the ALJ's finding that Claimant could perform his past relevant work. (Id. at 13.) Finally, the Commissioner asserts that Claimant's activities of daily living were considered by the ALJ and determined to undercut his disabling limitations. (Id. at 14.) For all these reasons, the Commissioner asserts that the prior RFC assessment, issued three years prior to the instant decision, was not supported by the evidence of record. (Id.) Pursuant to AR 00-1(4), the ALJ gave the prior decision appropriate weight. (Id. at 15.) Finally, the Commissioner notes that even had the ALJ limited Claimant to light level work, the VE testified that Claimant could have performed his past relevant work as a security guard. (Id.) Thus, Claimant incorrectly asserts that he should have been found disabled under the grids, because the grids analysis occurs at step five of the sequential analysis and the instant decision was made at step four. (Id.)

Analysis.

In Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999)(King, Circuit Judge), the Fourth Circuit recognized that the "SSA treats a claimant's second or successive application for disability benefits as a claim apart from those earlier filed, at least to the extent that the most recent application alleges a previously unadjudicated period of disability." Within the Fourth Circuit, Acquiescence Ruling 00-1(4), 2000 WL 43774 (Jan. 12, 2000), interpreted the Albright decision

> to hold that where a final decision of SSA after a hearing on a prior disability claim

8

contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period.

The SSA explained how it applies the Albright decision within the Fourth Circuit as follows:

When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances. In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

Where the prior finding was about a fact which is subject to change with the passage of time, such as a claimant's residual functional capacity, or that a claimant does or does not have an impairment(s) which is severe, the likelihood that such fact has changed generally increases as the interval of time between the previously adjudicated period and the period being adjudicated increases. An adjudicator should give greater weight to such a prior finding when the previously adjudicated period is close in time to the period being adjudicated in the subsequent claim, e.g., a few weeks as in *Lively*. An adjudicator generally should give less weight to such a prior finding as the proximity of the period previously adjudicated to the period being adjudicated in the subsequent claim becomes more remote, e.g., where the relevant time period exceeds three years as in *Albright*. In determining the weight to be given such a prior finding, an adjudicator must consider all relevant facts and circumstances on a case-by-case basis.

Id., 2000 WL 43774, at *4; see also, Gilliam v. Astrue, 2010 WL 1009726, at *9-12 (S.D. W.Va.).

In the ALJ's September 28, 2006, decision, the ALJ acknowledged his obligation under AR 00-1(4), and found that the substantial evidence of record did not support the prior RFC assessment, which was rendered three years earlier. (Tr. at 9-26.) The ALJ considered ALJ Kilbane's findings with respect to the current time period and determined that they were irrelevant as the previously adjudicated period was not close in time to the current time period being adjudicated. (Tr. at 22.) The

9

ALJ found that Claimant presented "no new evidence showing a lack of change in his condition or similar limitations." (Id.) In reaching this decision, the ALJ acknowledged Claimant's testimony and his reported activities of daily living. (Tr. at 23-24.) The ALJ concluded that Claimant shopped for groceries, performed at least some household chores, vacuumed, visited, drove, and was greatly involved in the activities of his young son. (Id.)

The evidence of record demonstrated that Claimant underwent various foot procedures and that his foot pain improved. (Tr. at 12-19, 214.) Similarly, Claimant's knee pain was alleviated after surgery to repair the medial meniscal tear. (Tr. at 12-19, 349-50, 407-10.) As the Commissioner notes, Claimant also was able to elevate his shoulders and exhibited good flexion of both arms, no weakness of handgrip, and normal sensation. (Id.) Dr. Cayro, a pain specialist, encouraged Claimant to be as active as possible. (Tr. at 24.) The ALJ also noted that despite directions to the contrary by medical professionals, Claimant continued to smoke. (Tr. at 376.) The ALJ also considered the opinion evidence of record and adopted the opinions of the state agency medical consultants. (Tr. at 24-25.) In view of the foregoing, the Court finds that the ALJ's decision that the prior RFC assessment was no longer valid is supported by substantial evidence. As the Commissioner notes, had the ALJ determined that Claimant was limited to light exertional level work, the VE testified that he could have performed his past relevant work as a security guard. (Tr. at 55.)

To the extent that Claimant alleges that the ALJ should have found him disabled under the grids, the Court finds that the ALJ was not required to consider the grids. The ALJ determined at step four that Claimant could perform his past relevant work. He did not reach step five, at which step he would have considered the grids.

Based on the foregoing, the Court finds that the ALJ properly considered AR 00-1(4) and that his decision to issue a new RFC was supported by substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 14.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

.	The Clerk of this Court is directed to send a copy of this Memorandum Opinion to counsel of record.

ENTER: September 30, 2011.

R. Clarke VanDervort
United States Magistrate Judge